UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

FERGUS FALL DIVISION

RECEIVED BY MAIL
JUL 21 2025
Clerk, U.S. District Court
Fergus Falls, Minnesota

**CHAD CANE**,
Plaintiff,

vs.

**JANA AUSTAD**, in her individual capacity,
Defendant.

Case no. 0.25-CV-02835

CORRECTED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF
(42 U.S.C. § 1983; U.S. Const. amends. IV, V, XIV; Minn. Stat. §§ 555.01, 609.43)

**DEMAND FOR JURY TRIAL**

## I. PRELIMINARY STATEMENT

This case arises from a flagrant abuse of judicial authority and a structural violation of constitutional safeguards. Plaintiff Chad Cane built and resides in the home targeted by Defendant Judge Jana Austad's January 28, 2025 enforcement order. Despite never being named, served, or joined in the underlying case, Plaintiff was silenced in open court and stripped of his property rights by order of a judge who knew he was not before the court. That order authorized warrantless entry into Plaintiff's home, abatement of structures, and imposition of costs, all without affording him the constitutional minimum: notice and an opportunity to be heard.

This action seeks to, enjoin further violations, and hold Defendant personally liable for acting outside her judicial function and in the clear absence of jurisdiction, in reckless disregard of clearly established constitutional rights. Plaintiff seeks declaratory and injunctive relief to restore his rights, and damages to compensate and deter.

1

SCANNED
JUL 21 2025
U.S. DISTRICT COURT FF

## II. JURISDICTION, VENUE, AND STANDING

1. Federal question jurisdiction exists under 28 U.S.C. § 1331, as this action arises under the United States Constitution and 42 U.S.C. § 1983, which provides:

> "**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...**"

2. Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3), which provides jurisdiction over civil rights actions for deprivation of constitutional rights under color of state law.

3. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367, including claims arising under Minn. Stat. § 609.43, abuse of process, and the Minnesota Declaratory Judgments Act.

4. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b), as all acts and omissions occurred within the state and district.

5. Plaintiff resides in Cass County, Minnesota, and requests that all in-person proceedings be held in the Fergus Falls Courthouse, pursuant to D. Minn. LR 1.1(c) and LR 77.1(a). Transfer to a distant division would impose hardship and raise neutrality concerns, particularly given the Defendant's coordination with county officials. Venue is also appropriate under 28 U.S.C. § 1404(a), considering convenience of the parties and interests of justice.

6. Defendant acted under color of state law by issuing an order pursuant to state statutes, including Minn. Stat. § 394.37, while holding public office. This satisfies the state action requirement under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), and *Dennis v. Sparks*, 449 U.S. 24 (1980).

7. Plaintiff has standing under Article III of the U.S. Constitution. He suffered:

   • an injury-in-fact (loss of use, invasion of home, exclusion from proceedings),

   • that is fairly traceable to Defendant's unlawful conduct,

   • and is likely to be redressed by declaratory and injunctive relief, as well as damages. (*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

## III. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**A. Plaintiff's Property Interest and Exclusion from Proceedings**

2

8. Plaintiff Chad Cane resides full-time at the property targeted by Defendant's January 28, 2025 enforcement order. He is the sole builder of the residence located on that parcel and furnished all labor and materials without compensation.

9. Chad Cane holds a protected property interest under the Fourth, Fifth and Fourteenth Amendments, as well as a recognized interest under Article I, Section 12 of the Minnesota Constitution, which provides:

**"A reasonable amount of property may be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law. Provided, however, that all property so exempted shall be liable to seizure and sale for any debts incurred to any person for work done or materials furnished in the construction, repair or improvement of the same, and provided further, that such liability to seizure and sale shall also extend to all real property for any debt to any laborer or servant for labor or service performed."**

10. At all times relevant, Plaintiff was in open, continuous, and exclusive possession of the property and residence. He received no notice of legal action involving the property and was not named, served, or joined in Cass County v. Rhonda Aho, Case No. 11-CV-24-1083.

### B. The December 11, 2024 Hearing and Plaintiff's Attempt to Speak

11. Plaintiff was physically present at the December 11, 2024 hearing before Defendant Judge Jana Austad. During that hearing, Plaintiff attempted to speak on his own behalf and explain his legal and possessory interest in the home.

12. Despite being physically present, Plaintiff was explicitly denied the right to be heard. Judge Austad directed Plaintiff to "take a seat," and proceeded without permitting any testimony or legal participation from him. (See Exhibit B, p. 3, line 5: "Okay. Mr. Cane is not a party and he is not an attorney. So Mr. Cane have a seat.")

13. Rhonda Aho, the named party in the case, informed the court on the record that Chad Cane had an interest and claim in the property and structures. **(Exhibit B, p. 19, lines 20–25: "Chad Cane has a claim and interest in this property and structures complained of he was never made a party to the action. Any declaration would directly affect his rights whether he was or or was not a party to this proceeding.")**

14. Judge Austad acknowledged the statement but refused to hear any further facts or consider Plaintiff's interest. No motion to join Plaintiff was raised or considered. No notice was issued. No due process was afforded.

### C. The Enforcement Order Issued Without Jurisdiction

3

15. On January 28, 2025, Defendant Austad issued a signed **"Order" Granting County's Motion for Summary Judgment against the property. (Exhibit A) Although Chad Cane was not named or served, the order directly targeted the home he built and resides in.**

16. The Order authorized sweeping enforcement powers, including (paragraph 4):

- "Cass County is authorized to enter the property, including any structures therein."

- "and to obtain more factual information as to how the County plans to proceed."

- "...including by abating the violations the by removing the structures from the property and assessing the cost against the property."

17. The Order functionally authorized warrantless entry, enforcement against an unjoined non-party, and use of state power without any adversarial process.

18. Under Camara v. Municipal Court, 387 U.S. 523 (1967), administrative inspections of private dwellings constitute searches subject to the Fourth Amendment. Yet Defendant issued the Order absent warrant, probable cause, or consent, and with full knowledge that Plaintiff had a possessory interest.

### D. Incorporation of Appellate Record and Judicial Findings

19. Plaintiff's constitutional claims are further substantiated by the factual and legal record in Case No. A25-0492, currently pending before the Minnesota Court of Appeals. That appeal challenges the same January 28, 2025 enforcement order issued by Defendant Austad and documents multiple fatal legal defects, including the failure to join Plaintiff as a necessary party under Minn. Stat. § 555.11 and controlling precedent (***Unbank Co. v. Merwin Drug Co., 677 N.W.2d 105 (Minn. App. 2004)***).

20. The appellate record confirms that:

- Defendant Austad issued an enforcement order against a known, unserved, and unjoined property occupant;

- The court record reflects no service, no joinder, and no opportunity to be heard, in direct violation of Plaintiff's Fourteenth Amendment rights;

- Defendant Austad relied on legally inapplicable precedent involving commercial enterprises (e.g., fur trading and adult bookstores) to justify governmental intrusion onto private residential property;

- The enforcement action authorized by Defendant lacked any showing of injury, probable cause, judicial warrant, or lawful jurisdiction.

21. These facts are not hypothetical. They are established in a parallel judicial record, under appellate review, and incorporated here to demonstrate that Defendant acted entirely outside the scope of lawful judicial authority. The harm to Plaintiff is structural, ongoing, and constitutionally grounded. Defendant's conduct was not protected by judicial immunity, as it was performed without jurisdiction, beyond any legitimate adjudicative function, and in flagrant violation of clearly established constitutional rights.

### E. Defendant's Appearance with County Officials Post-Order

22. On January 31, 2025, just three days after issuing the Order, Judge Austad appeared publicly at a Cass County Joint Powers Meeting, alongside officials from Cass County, the same individuals responsible for bringing the action and enforcing her Order.

23. This appearance was extrajudicial in nature and violated basic principles of judicial neutrality. The Supreme Court has recognized that judges must avoid not only actual bias but also the appearance of impropriety. (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)).

24. The proximity in time between the Order and the public coordination appearance—coupled with the absence of Plaintiff from the underlying action—establishes the basis for extrajudicial conduct under *Mireles v. Waco*, 502 U.S. 9 (1991).

### F. Plaintiff's Continuing Harm and Lack of Redress

25. Since the Order's issuance, Plaintiff has experienced ongoing injury. The **threat of forced entry, the disruption of peaceful habitation, and the structural denial of due process remain active.**

26. Plaintiff made informal efforts to challenge the action but was procedurally barred due to his exclusion from the original case. The state court record contains no motion for joinder, no certificate of service naming Plaintiff, and no process identifying him as a party.

27. As of the date of this filing, the January 28, 2025 Order remains **on the record, unrevoked and enforceable—continuing to chill Plaintiff's property rights and violate constitutional protections.**

### G. Defendant's Prior Knowledge of Constitutional Limits

28. Judge Austad's conduct was not merely mistaken, but reflected knowing and reckless disregard of clearly established law. Before becoming a judge, Jana Austad represented Wabedo Township in *Alton v. Wabedo Township*, 524 N.W.2d 278, 279 (Minn. App. 1994), where the Minnesota Court of Appeals held that a township's effort to burden private property without proper joinder, due process, and just compensation violated Article I, Section 13 of the

5

Minnesota Constitution and the Takings Clause of the Fifth and Fourteenth Amendments. In *Alton*, the court rejected arguments that notice of intent alone was sufficient, holding that the township could not take or burden property beyond its actual use without providing a hearing and compensation. **(See Exhibit E.)**

29. Having personally litigated and lost on these principles, Judge Austad was fully aware that government action depriving property owners of rights or imposing burdens without notice, joinder, due process, and just compensation is unconstitutional. Nevertheless, in this case, she disregarded those same constitutional protections, issuing orders that directly targeted Plaintiff and his property despite his exclusion from the proceedings. This history demonstrates not merely error, but intentional and reckless violation of clearly established law she knew and once advocated as an attorney.

## IV. LEGAL CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE FOURTEENTH AMENDMENT (Procedural Due Process)

(42 U.S.C. § 1983 – Against Defendant Austad in her individual capacity)

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. The **Fourteenth Amendment to the United States Constitution provides:"No State shall… deprive any person of life, liberty, or property, without due process of law…"**

32. The right to notice and an opportunity to be heard before deprivation of property is a core constitutional guarantee. (*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

33. Plaintiff Chad Cane had a constitutionally protected property interest in the home he built and resides in. He also had a liberty interest in occupying that home free from arbitrary government interference.

34. In the underlying case (Cass County v. Rhonda Aho, 11-CV-24-1083), Plaintiff was never named as a party, never served, and never joined, yet Judge Austad issued an order directly affecting his property rights.

35. At the December 11, 2024 hearing, Plaintiff was present and attempted to speak. Defendant Austad silenced him on the record: (See Exhibit B, p. 3, line 5: "Okay. Mr. Cane is not a party and he is not an attorney. So Mr. Cane have a seat.")

36. Rhonda Aho informed the court: **(Exhibit B, p. 19, lines 20–25:"Chad Cane has a claim and interest in this property and structures complained of he was never made a party to the action. Any declaration would directly affect his rights whether he was or or was not a party to this proceeding.")**

37. Defendant acknowledged this but took no steps to afford due process, choosing instead to issue the Order anyway.

38. Under *Goldberg v. Kelly*, 397 U.S. 254 (1970), when government action affects a person's housing or subsistence, notice and an adversarial hearing are constitutionally required.

39. Defendant's issuance of an enforcement order against Plaintiff—absent joinder, notice, or hearing—violated the procedural due process requirements of the Fourteenth Amendment.

### COUNT II – VIOLATION OF THE FOURTH AMENDMENT (Unlawful Search and Seizure)

(42 U.S.C. § 1983 – Against Defendant Austad in her individual capacity)

40. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

41. The Fourth Amendment to the United States Constitution provides: **"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated..."**

42. On January 28, 2025, Defendant Austad issued an order authorizing Cass County officials to:

- Enter the property and all structures located thereon.
- Determine uses, and if additional violations exist, obtain more factual information.
- Assess costs and fees associated with enforcement and removal . (Exhibit A, ¶4)

43. These actions constitute governmental intrusions onto private property, including physical entry into a home without consent or a warrant.

44. In *Camara v. Municipal Court*, 387 U.S. 523 (1967), the Supreme Court held that even administrative inspections require a warrant when entering a private dwelling.

45. In *Soldal v. Cook County*, 506 U.S. 56 (1992), the Court reaffirmed that the Fourth Amendment protects possessory interests in property, even in civil contexts.

46. Defendant's order authorized physical entry into Plaintiff's home without a warrant, probable cause, or consent, constituting an unreasonable search and seizure under the Fourth Amendment.

47. Plaintiff's home was his private dwelling, fully occupied and used as his sole residence. The threat of entry under color of law disrupted his constitutional right to be secure.

48. The violation was complete when the order was issued. *United States v. Jacobsen*, 466 U.S. 109 (1984) (a seizure occurs when government meaningfully interferes with possessory interests in property).

## COUNT III – VIOLATION OF THE FIFTH AMENDMENT (Takings Clause)

(42 U.S.C. § 1983 – Against Defendant Austad in her individual capacity)

49. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50. The Fifth Amendment to the United States Constitution provides: **"…nor shall private property be taken for public use, without just compensation."**

51. Defendant's January 28, 2025 Order imposed government control over Plaintiff's private residence—authorizing entry, removal of structures, and the imposition of financial liability—without compensation or adversarial review.

52. In *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987), the Supreme Court held that even temporary governmental takings require just compensation.

53. In *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), the Court reaffirmed that government-authorized physical invasions of property, even for short durations, are per se takings.

54. Here, the government was authorized to:

- Physically enter private land;
- Inspect and remove structures;
- Impose costs and liens—without adjudicating liability through a constitutionally valid process.

55. These actions constitute a regulatory taking and/or physical invasion, violating the Fifth Amendment. The takings clause does not allow conditional, no-compensation invasions. (*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982))

56. Plaintiff has never been compensated for the intrusion, enforcement threat, or loss of use, despite exercising full possessory and ownership-like control over the property.

## COUNT IV – Violation of § 1983: Actions Outside Judicial Function & Jurisdiction

(42 U.S.C. § 1983 – Against Defendant Austad in her individual capacity)

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Judicial immunity protects only judicial acts taken within jurisdiction. It does not shield conduct that is either (1) nonjudicial in nature, or (2) performed in the clear absence of all jurisdiction. (***Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11 (1991))**.

59. In ***Forrester v. White*, 484 U.S. 219, 227–30 (1988), the Supreme Court clarified that whether an act is "judicial" depends on its nature, not the actor's title.**

60. Here, Austad's conduct meets both exceptions:

  a. **Nonjudicial function: She explicitly excluded Plaintiff as a party ("Mr. Cane is not a party to this case. Please take a seat."), yet proceeded to issue an order adjudicating his property rights. Entering enforcement orders against a known non-party is not a judicial function, but an administrative or enforcement act unprotected by immunity.**

  b. **Clear absence of jurisdiction: A court lacks both personal and subject-matter jurisdiction over an individual who is not a party to the proceeding. By issuing orders against Plaintiff while denying him party status and refusing to hear him, Austad acted in the complete absence of jurisdiction over him. (*Burnham v. Superior Court*, 495 U.S. 604, 610–11 (1990); *Unbank Co. v. Merwin Drug Co.*, 677 N.W.2d 105, 110 (Minn. App. 2004)).**

61. Even if Austad nominally had subject-matter jurisdiction over declaratory judgment actions generally, her deliberate refusal to join or hear Plaintiff while exercising authority over his property rendered her actions jurisdictionally void as to him.

62. Her subsequent appearance at a county enforcement meeting days later further blurred any pretense of judicial neutrality and underscored the extrajudicial and administrative nature of her conduct (***Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009))**.

63. Defendant knowingly acted beyond judicial authority, in reckless disregard of clearly established law. Accordingly, she is not entitled to judicial immunity and is personally liable for violating Plaintiff's constitutional rights under 42 U.S.C. § 1983 (***Hafer v. Melo*, 502 U.S. 21, 25 (1991))**.

64. Judge Austad's own experience in *Alton v. Wabedo Township* underscores her knowledge of the constitutional limits she disregarded, making her conduct here even more clearly outside the scope of any immunity.

65. Plaintiff has standing under *Hafer v. Melo*, 502 U.S. 21 (1991), to sue Defendant in her individual capacity for acts performed under color of state law that violated clearly established constitutional rights.

## COUNT V – STATE MISCONDUCT CLAIM

*(Based on Violation of Minn. Stat. § 609.43(1) and Related Constitutional Injury)*
(Against Defendant Austad)

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Minn. Stat. § 609.43(1) provides: "A public officer or employee who does any of the following is guilty of a gross misdemeanor: (1) Intentionally fails or refuses to perform a known mandatory, nondiscretionary, ministerial duty of the office..."

68. Defendant Austad had a ministerial obligation to ensure that judicial orders are entered only against properly joined and served parties and in accordance with fundamental due process. This is not a discretionary function—it is a constitutional mandate.

69. Despite actual notice of Plaintiff's property interest and physical presence in court, Defendant Austad refused to join, serve, or hear him, and then issued an order against him.

70. The act of issuing a court order affecting a non-party's constitutional rights without process, and then coordinating with executive actors to enforce it, exceeds lawful judicial authority and satisfies all elements of intentional misconduct under Minn. Stat. § 609.43(1).

71. Plaintiff, as the person directly injured by the misconduct, has standing to bring a civil claim based on this statutory violation and its resulting harms, including constitutional injury, emotional distress, and ongoing enforcement threats.

72. While Minn. Stat. § 609.43 is a criminal statute, courts have long recognized that violations of state law may support civil liability when they result in constitutional injury. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (Section 1983 imposes liability for conduct under color of law that violates federal rights, regardless of whether the conduct is also criminal); Screws v. United States, 325 U.S. 91 (1945).

73. Here, Defendant's violation of her ministerial duties under § 609.43 directly resulted in constitutional deprivation, including violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. As such, the misconduct supports both § 1983 liability and common-law tort recovery under Minnesota law.

## COUNT VI – ABUSE OF PROCESS (State Tort Claim)

(Against Defendant Austad)

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Under Minnesota common law, abuse of process requires: 1. The existence of an ulterior purpose, and 2. The misuse of legal process after it has been issued. (*Kittler & Hedelson v. State Farm Mut. Auto. Ins. Co.*, 231 Minn. 115, 42 N.W.2d 219 (1950)).

76. Defendant Austad misused the judicial process by issuing an order against an individual who was never a party to the case, and doing so with full knowledge of his property interest and physical presence.

77. The enforcement order was not issued to adjudicate a legal controversy between parties. It was used to enable Cass County to bypass legal safeguards, target an unrepresented individual, and extract compliance from someone who had no opportunity to defend themselves.

78. The ulterior purpose was to enforce permitting and zoning compliance against Plaintiff—without having to afford him constitutional process.

79. Once the process (the enforcement order) was issued, Defendant compounded the misuse by appearing alongside the enforcement officials at a public meeting, blurring the line between adjudicator and enforcer.

80. These facts meet both prongs of Minnesota's abuse of process test. Defendant must be held liable for using the judicial process not to resolve a case or controversy, but to execute administrative enforcement.

## COUNT VII – DECLARATORY JUDGMENT

(28 U.S.C. §§ 2201–2202; Minn. Stat. § 555.01 – Against Defendant Austad)

81. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

82. Under 28 U.S.C. § 2201(a): "In a case of actual controversy… any court of the United States… may declare the rights and other legal relations of any interested party seeking such declaration…"

83. Plaintiff seeks a declaration that the January 28, 2025 enforcement order as issued is unconstitutional under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

84. The "actual controversy" requirement is met under MedImmune, Inc. v. Genentech, 549 U.S. 118 (2007), where the Court clarified that a live controversy exists when the challenged action creates an ongoing threat or deprivation of legal rights.

85. This action is further authorized under Ex parte Young, 209 U.S. 123 (1908), which permits federal courts to enjoin and declare unconstitutional any state action that violates federal rights, even when undertaken by judicial officers. Federal jurisdiction is proper because no state has the authority to immunize its officers from federal constitutional scrutiny.

86. In Doe v. Bolton, 410 U.S. 179, 188 (1973), the Supreme Court reaffirmed that the mere existence of an enforceable government order creates a sufficient threat of harm to support federal declaratory jurisdiction—even before enforcement occurs.

87. Because the enforcement order remains valid on its face, subject to execution at any time, and because Plaintiff continues to reside in the affected home, the threat of enforcement is real, present, and ongoing.

88. A declaration that the order is unconstitutional as applied Mr. Cane's interests is necessary to clarify Plaintiff's rights and prevent further injury.

## COUNT VIII – INJUNCTIVE RELIEF
(Against Defendant Austad – Federal Equitable Claim)

89. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90. Plaintiff seeks a permanent injunction to prevent further constitutional violations.

91. Under *Winter v. NRDC*, 555 U.S. 7 (2008), a party seeking injunctive relief must show:

   1. A likelihood of success on the merits;
   2. A likelihood of irreparable harm;
   3. That the balance of equities tips in their favor;
   4. That an injunction is in the public interest.

Additionally, this Court's authority to issue equitable relief is reinforced by the All Writs Act, 28 U.S.C. § 1651, which empowers federal courts to issue orders necessary to protect their jurisdiction and enforce constitutional protections. Relief is proper where state process threatens federally secured rights without meaningful remedy.

92. Plaintiff satisfies all elements:

   • Success on the merits is demonstrated through repeated constitutional violations: denial of due process, unauthorized enforcement, and absence of jurisdiction.

   • Irreparable harm exists due to ongoing threats to Plaintiff's home, occupancy, and privacy.

   • Equities favor Plaintiff, who merely seeks constitutional protection—not retaliation.

   • The public interest is served by enforcing judicial neutrality, due process, and structural separation of powers.

93. Accordingly, Plaintiff seeks an order permanently enjoining Defendant Austad from:

- Issuing further orders against Plaintiff without notice, service, and jurisdiction;
- Participating in any enforcement action related to Plaintiff's home or property;
- Engaging in coordination with executive officials in enforcement matters affecting Plaintiff's rights.

## V. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant Austad, and award the following relief:**

### A. DECLARATORY RELIEF

1. A declaration that Defendant Austad's issuance of the January 28, 2025 enforcement order against Plaintiff, while excluding him as a party, violated Plaintiff's constitutional rights and was performed in the clear absence of jurisdiction.

### B. INJUNCTIVE RELIEF

2. A permanent injunction prohibiting Defendant Austad from:

- Issuing further orders against Plaintiff or his property without notice, joinder, service, and jurisdiction;
- Participating in or coordinating with any enforcement activities by executive officials relating to Plaintiff's property.

### C. COMPENSATORY DAMAGES

3. Compensatory damages in an amount to be determined at trial, including for emotional distress, loss of use and enjoyment of home, and the chilling of constitutional rights.

### D. PUNITIVE DAMAGES

4. Punitive damages in an amount sufficient to punish Defendant's unconstitutional conduct and deter similar conduct by others.

### E. NOMINAL DAMAGES

5. Nominal damages in recognition of the violation of Plaintiff's constitutional rights even if no economic loss is shown.

### F. COSTS AND FEES

6. Plaintiff's costs of this action, including any attorneys' fees as authorized by 42 U.S.C. § 1988.

### G. VENUE CONTROL

7. That all in-person proceedings be held at the Fergus Falls Courthouse under D. Minn. LR 1.1(c), based on Plaintiff's residence and to preserve impartiality.

### H. PERSONAL LIABILITY

8. A finding that Defendant Austad acted outside her judicial capacity and that no public funds shall be used to indemnify her for damages arising from her unconstitutional conduct.

### I. ADDITIONAL RELIEF

9. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

## VERIFICATION AND SIGNATURE

I, Chad Cane, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 17th day of July, 2025.

Respectfully submitted,

*/s/ Chad Cane*

**Chad Cane**
1586 24th. St SW
Pine River, MN 56474
chadcane@gmail.com

## Exhibit Index

Exhibit A – January 28, 2025 Enforcement Order (Cass County v. Rhonda Aho, 11-CV-24-1083)

Exhibit B – Hearing Transcript from December 11, 2024

Exhibit C – Public Record of Joint Powers Meeting, January 31, 2025

Exhibit D -- Declaration of Rhonda Aho

Exhibit E – Counsel of Record in Alton v. Wabedo Township, 524 N.W.2d 278, 279 (Minn. App. 1994)